CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 23 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No 7:07-cr-00001 |
| | ) | |
| v. | ) | <u>2255 MEMORANDUM OPINION</u> |
| | ) | |
| MONICA BLAIR YATES | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |

This is a motion under to 28 U.S.C. § 2255 by Monica Blair Yates, proceeding <u>pro se</u>, challenging her guilty pleas to mail fraud, in violation 18 U.S.C. § 1341, and money laundering, in violation of 18 U.S.C. § 1957, and her sentence of 97 months imprisonment. Yates claims that her constitutional rights were violated in numerous ways and that she was denied the effective assistance of counsel. She seeks "a reduction in [her sentence] as a result." The court finds that Yates' guilty plea was knowing and voluntary, that she waived her right to collaterally attack her plea and sentence, and that her claims lack merit. Accordingly, the court grants the United States' motion to dismiss Yates' § 2255 motion.

I.

In January 2007, a grand jury indicted Yates on multiple counts of mail fraud, wire fraud, and money laundering arising out of a Ponzi scheme which she operated first as an employee of CUNA Brokerage Services, Inc. ("CUNA") and later as an employee of Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). Following a hearing, the Magistrate Judge ordered Yates held for trial without bond. On counsel's motion, the Magistrate Judge appointed a clinical psychologist, Dr. Joseph Leizer, to evaluate Yates' competency to stand trial and, to determine whether she may have suffered from a mental disease or defect at the time of the alleged offenses, and if so, whether she lacked substantial capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of law.

As to competency, Dr. Leizer concluded that Yates "seems to have the capacity to both understand the nature and consequences of the proceedings against her as well as to assist her attorney in her own defense." He reported:

> She gave no impression of being unable to understand either the terms of her tentative plea agreement, the consequences of a guilty plea or the constitutional rights she would have to waive when pleading guilty. In addition she appeared to have the intellectual and emotional resources for assisting her attorney in her own defense and expressed trust in her attorney to represent her in general as well as to negotiate a plea agreement for her.
>
> Mrs. Yates is also entirely capable of understanding the roles of the various individuals involved in court, the expectations involved in swearing to tell the truth, as well as the meanings and consequences of guilty as well as not guilty pleas and verdicts. She further denied that she was coerced in any manner into entering her plea of guilty

As to her sanity at the time of the offenses, Dr. Leizer concluded that "Mrs. Yates appears to have had the capacity to know what she was doing and to appreciate the wrongfulness of her conduct, as well as to conform her conduct to the requirements of the law." He reported further:

> Mrs. Yates denied that she was either manic or feeling "hyper" at the time of the incident, ruling out the possibility of an insanity defense based upon manic behavior stemming from a Bipolar Disorder. In addition, her behavior during the time period in which her charges occurred seemed [to] have been characterized by an analytical and deliberate weighing out of her options and such factors as interest rates, rates of return, low and high risk investments, dividend schedules, balancing new investment capital coming in with the need to pay out earlier investors, etc.

Consequently, the Magistrate Judge found Yates competent to stand trial. Ultimately, Yates entered into a written plea agreement with the government and pled guilty.

Yates' plea agreement provided: that she would plead guilty to Count One of the indictment charging her with mail fraud (which was subject to 20 years imprisonment) and Count Seven charging her with money laundering (which was subject to 20 years imprisonment); that the financial

2

loss caused by her fraud was between $1,000,000 and $2,500,000[1]; that there had been no representation "made whatsoever by any agent or employee of the United States . . . as to what the final disposition of this matter should or [would] be"; that sentencing would be in the "discretion of the court" after considering the sentencing guidelines and the factors set forth in 18 U.S.C. § 3553(a); that any calculation "regarding the guidelines by the United States Attorney's Office or by [her] attorney [was] speculative and [was] not binding upon the court, the Probation Office, or the United States Attorney's Office"; that she was waiving her right to appeal her sentence and "voluntarily willing to rely on the court in sentencing [her] under the guidelines"; that she was waiving her right to collaterally attack the judgment and sentence imposed by the court; that a factual basis supported her plea; that she was pleading guilty because she was in fact guilty; that the government would not bring further charges against her arising out of her fraudulent activity at CUNA and Merrill Lynch; that she had discussed the terms of the plea agreement and "all matters pertaining to the charges" against her with her attorney and was satisfied with her attorney and his advice; that she understood that she had the right to make known to the court, at any time, any dissatisfaction she might have had with her attorney's representation; that she agreed to make known to the court no later than at the time of sentencing any dissatisfaction or complaint she might have had with her attorney's representation; that she waived any claim she might have had for ineffective assistance of counsel "known and not raised" by her to the court at the time of sentencing; and that the written plea agreement set forth the entire understanding between the parties." The government also summarized the salient terms of the plea agreement in open court to ensure no

---

[1] The plea agreement has obvious typographical errors concerning this matter. It specifies that the financial loss caused by Yates' fraud was between "1,00,000 and $2,50,000." The agreement unequivocally provides, however, that a "16 point Specific Offense Characteristic is appropriate" based on the amount of the loss. That 16-point increase corresponds with a loss between $1,000,000 and $2,500,000 under guideline § 2B1.1(b)(1)(I). Furthermore, it was clearly explained in open court that the amount of the loss was between $1,000,000 and $2,500,000.

3

misunderstandings.

The court then conducted a thorough plea colloquy, during which Yates affirmed under oath, among other things: that she had received a copy of the indictment; that she had discussed the charges and her case with her counsel; that her counsel had explained to her the elements of each offense; that she was fully satisfied with counsel's representation; that she had read the entire plea agreement before she signed it; that she understood everything in the agreement; that no one had made any other or different promise or assurance to her of any kind in an effort to induce her to enter a plea of guilty; that no one had forced her to enter the plea; that she understood that each offense carried a possible period of incarceration of 20 years, a fine, restitution, and a period of supervised release; that the court would not be able to determine the appropriate guideline sentence range for her case until after the presentence report had been completed and she and the government had an opportunity to challenge the facts reported by the probation officer; that she was waiving her right to appeal; that she was waiving her right to collaterally attack her plea and sentence (which she acknowledged her counsel had "fully" explained to her); that she understood all of her rights on a plea of not guilty; and that she understood that by pleading guilty she was waiving the rights associated with a plea of not guilty.

The government submitted a written summary of facts to support the plea and also read the summary in open court. The four-page written summary detailed a somewhat complicated Ponzi scheme (using the funds from more recent investors to "pay" investors from whom she had previously taken money as part of the scheme) which Yates began in 2004 while she was employed as a financial adviser at CUNA and which continued well into 2006 while she was employed with Merrill Lynch. Yates acknowledged that she had read the summary and agreed with it in its entirety. Yates then pled guilty to Counts One and Seven of the indictment, and the court, concluding that

4

Yates was "fully competent and capable of entering an informed plea," and that her plea was a knowing and voluntary plea supported by an independent basis in fact containing the essential elements of the two offenses to which he was pleading, accepted her plea and adjudged her guilty of both offenses.

According to the presentence report, Yates' mail fraud offense called for: a base offense level of 7 under United States Sentencing Guidelines § 2B1.1(a)(1); a 16-level increase, pursuant to § 2B1.1(b)(1), because the financial loss caused by the fraud was more than $1,000,000; a 2-level increase, pursuant to § 2B1.1(b)(2)(A), because the offense involved ten or more victims; a 4-level increase, pursuant to § 2B1.1(b)(15)(A)(iii), because the offense involved a violation of securities law, and at the time of the offense, the defendant was an investment adviser; a 2-level increase, pursuant to § 3A1.1(b)(1), because the offense involved vulnerable victims; and a 3-level decrease, pursuant to §§ 3E1.1(a) and (b), because the defendant accepted responsibility and timely notified the government of her intention to plead guilty. This resulted in a total offense of 28. According to the report, Yates had three criminal history points resulting in a criminal history category III: one point was assessed because the General District Court of Botetourt County, Virginia had an offense relating to animal neglect under advisement, and two points were assessed based on two separate convictions for animal cruelty. This resulted in a guideline range of 97 to 121 months. The presentence report also determined that Yates owed restitution in the amount of $1,581,055.75.

Counsel filed written objections to the "vulnerable victim" 2-level increase and to the criminal history point assessed for the animal neglect charge that the Botetourt General District Court had under advisement. The court overruled Yates' objections and, after hearing testimony from Yates' mother, sister, and probation officer (who testified to "a series of inaccuracies in the information" provided by Ms. Yates), and after listening to Yates' allocution, determined that the

5

low end of the advisory guideline range was an appropriate sentence considering the factors specified by 18 U.S.C. § 3553(a). Consequently, the court sentenced Yates to 97 months and ordered her to make restitution in the amount determined in her presentence report. Yates did not appeal.

One year later, Yates filed her current § 2255 motion alleging that: her counsel rendered ineffective assistance because he failed to attend her presentence interview by her probation officer, failed to have Yates evaluated by a proper mental health professional, failed to arrange for a bond hearing to secure her constitutional right to pretrial release, failed to call character witnesses to testify at sentencing, failed to advise her of her right to remain silent, failed to explain the impact of a § 2255 waiver, failed to challenge the publication of her psychiatric evaluation, failed to object to the calculation of her criminal history category, failed to file a motion for discovery, failed to "challenge" the probation officer on cross examination, failed to review or explain the plea agreement, failed to advise Yates of the maximum sentence she faced, allowed the sentencing hearing to be continued without Yates' consent, and failed in various other unspecified ways to protect her constitutional rights; the court failed to consider her mental condition in determining her sentence; the probation officer's presentence report was "biased" and "prejudicial"; the Clerk of Court violated her right to privacy by "failing to restrict public access to [the psychologist's report]."

The United States has submitted the affidavit of Yates' court-appointed counsel, William H. Cleveland. Yates had retained counsel before Cleveland. Yates and her predecessor counsel had embarked on a strategy of fully cooperating, and Yates had given the government detailed proffers in hopes of mitigating her sentence. Cleveland's affidavit details the case he essentially inherited from predecessor counsel and his strategy in light what had already transpired.

## II.

Yates raises several claims of ineffective assistance of her court-appointed counsel.

However, Yates knowingly and voluntarily waived her right to collaterally attack her plea and sentence and many of Yates' ineffective assistance claims fall within the scope of that waiver. Therefore, those claims must be dismissed.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). The validity of a waiver "depends on whether the defendant knowingly and intelligently agreed to waive the right." Id. at 731-32. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22; see also United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Lemaster, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy–specifically, whether the district court questioned the defendant about the . . . waiver–the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162,

7

169 (4th Cir. 2005) (quoting United States v. General, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. The court must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal and § 2255 rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver. Attar, 38 F.3d at 732; Lemaster, 403 F.3d at 220 n.2; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); Blick, 408 F.3d at 169-71. Thus, in addition to evaluating the validity of Yates' guilty plea and waiver of collateral attack rights, the court must determine whether her claims falls within the scope of that waiver.

Here, the record fully establishes that Yates knowingly and intelligently entered a valid guilty plea and waived her right to collaterally attack her sentence, including any proceeding brought under § 2255. At Yates plea hearing, the court took care to ensure that Yates was entering her plea both knowingly and voluntarily by reviewing each provision until the court was fully satisfied that Yates understood. The court made a finding on the record at the plea hearing that Yates voluntarily and

8

knowingly entered into the plea.² This finding was not a mere formality but rather reflected the court's considered opinion that her plea was in fact knowing and voluntary. Nothing that has followed has dispelled that conclusion. Accordingly, the court concludes that Yates' waiver of her right to collaterally attack her conviction or sentence under § 2255 is valid and enforceable.

Finding that the waiver is valid, the court must now determine whether Yates' claims are included within the scope of the waiver. All of Yates' claims that pertain to times prior to Yates signing the plea agreement are within the scope of her waiver.³ These claims include that counsel was ineffective in failing to arrange a bond hearing, failing to have Yates evaluated by a proper mental health professional, failing to advise Yates of the consequences of a § 2255 waiver, failing to "advise [her] of [her] rights and "ensure [her] constitutional rights were protected," failing to challenge the publication of her psychiatric evaluation, failing to file a motion for discovery, failing to review or explain the plea agreement, and failing to advise Yates of the maximum sentence she faced. Based on the courts finding that her § 2255 waiver is valid and that these claims fall within the scope of that waiver, the court further finds that these claims of ineffective assistance of counsel are not cognizable claims in a § 2255 motion, and the court will dismiss them.

## III.

With regard to Yates' remaining ineffective assistance of counsel claims, the court finds that

---

²"[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005), (quoting Blackedge v. Allison, 431 U.S. 63, 74 (1977); and citing United States v. Bowman, 348F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74).

³ Yates expressly agreed "to make known to the court no later than the time of sentencing any dissatisfaction or complaint [that she might have] with [her] attorney's representation" and stated under oath during the plea colloquy that she was satisfied with his representation. By failing to call her current litany of complaints against counsel to the court's attention by the time of sentencing as agreed, she waived her right to bring such claims under § 2255 pursuant to the terms of the plea agreement.

9

none of these claims satisfy the two-prong test under Strickland and, therefore, they must be dismissed.

To demonstrate ineffective assistance of counsel, a petitioner must first show deficient performance, that is, that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-91 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689; see also Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011(1978). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance, that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. More critically here, a petitioner who alleges ineffective assistance of counsel following entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. 52, 53-57 (1985); Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hooper, 845 F.2d at 475; accord Hill, 474 U.S. at 59; and Fields, 956 F.2d at 1297. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins, 724

10

F.2d at 1430-31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290 (citing Strickland, 466 U.S. at 697). With regard to all of her remaining ineffective assistance of counsel claims, Yates does not allege that, but for counsel's alleged errors, she would not have pled guilty and would have insisted on going to trial. Accordingly, Yates has not demonstrated prejudice as to any of her remaining claims and, therefore, they will be dismissed.

### IV.

Yates claims that the court should have considered her psychological condition in sentencing her and erred in failing to so. However, Yates' claim has no merit and, therefore, the court dismisses it. Prior to sentencing Yates, the court reviewed her psychiatric evaluation, reviewed the presentence report which discussed her mental and emotional health, and heard testimony from Yates' sister and mother concerning her mental health both as a child and an adult. Before declaring her sentence at the bottom of the guideline range, the court acknowledged that Yates has "some serious psychological issues" and indicated that it would "give [her] the benefit of the doubt." Accordingly, the court did consider Yates' mental state in determining her appropriate sentence, and her claim, therefore, has no merit.[4]

### V.

Yates argues that the probation officer's presentence report was "biased" and "prejudicial" because it was "slanted by input from estranged members of [her] extended family." The court, however, is tasked with deciding the accuracy of presentence information, and it did so here. Accordingly, the court finds that Yates' claim has no merit and must be dismissed.

---

[4] The court notes that this claim is also defaulted by Yates' failure to raise the claim on direct appeal; however, the United States did not raise this affirmative defense or even address this claim in its motion to dismiss.

11

## VI.

Yates complains that the Clerk of Court's failure to initially place her psychological report under seal violated her right to privacy. However, this claim is not cognizable on habeas review. To state a claim for relief under § 2255, a petitioner must prove that one of the following occurred: (1) that her sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The petitioner bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965); Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998). Yates' claim that the Clerk of Court violated her right to privacy does not state a claim for relief under § 2255. Moreover, Yates does not suggest that the failure to file her psychiatric report under seal prejudiced her case in any way. Therefore, the court dismisses this claim.

## VII.

For the reasons stated above, the court will grant the United States' motion to dismiss Yates' § 2255 motion.

ENTER: This 23rd day of June, 2009.

_____
United States District Judge

12